IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME C. DANIELS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17 C 1389 |
| U.S. BANK NATIONAL ASSOCIATION and GREG FIORESI, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

U.S. Bank National Association employed Jerome Daniels as a Small Business Specialist. After receiving a customer complaint, U.S. Bank, through Daniels' supervisor, Greg Fioresi, investigated a loan Daniels approved for that customer. The Bank concluded Daniels violated Bank policy by extending the loan and it terminated Daniels' employment. Daniels is an African-American man older than 40 who alleges he suffers from depression. He sued the Bank under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the Americans with Disabilities Act, 42 U.S.C. § 12117(a), and both the Bank and Fioresi under 42 U.S.C. § 1981. The defendants have moved for summary judgment.

### Background

As a Small Business Specialist, Daniels sold U.S. Bank products and services to small businesses, including various types of loans. Daniels was trained to learn his

customers' needs in order to recommend the proper financial products. The Bank promulgated a policy for lending to small businesses, which stated that "[t]he underwriting and approval of loans under this policy shall be for business purposes only" and "[c]redit requests for the purpose of debt consolidation may not be underwritten and approved per this policy."

In the second quarter of 2016, Daniels contacted a customer who operated a Montessori school out of her personal residence. The customer told Daniels she needed to access credit to meet short-term costs, including a looming $35,000 payment on a balloon mortgage loan, a type of loan that features a large payment at the end of the mortgage term. Daniels helped the customer complete an application for a Cash Flow Manager Line of Credit for $30,000. The customer used the line of credit to make her mortgage payment, which Daniels learned of in June or July 2016.

On October 4, 2016, the customer contacted U.S. Bank to complain about Daniels' assistance. She stated that Daniels rushed her through the application process, failed to explain the terms of the agreement, and falsified her income level to ensure she would qualify for credit. Fioresi, along with human resources employees Andrea Corso and Rene Shepherd, investigated the line of credit. They interviewed the customer and Daniels. They ultimately concluded that Daniels had provided the customer with a small business loan intended for personal expenses, which as indicated earlier is against Bank policy. Daniels was aware of this policy. He contends, however, that he did not believe that the line of credit violated the policy, as the customer's home also housed her Montessori business. Fioresi, Corso, and Shepherd agreed that

Daniels should be terminated, citing the allegedly improper loan and possible dishonesty in completing the loan application.

Daniels' case was forwarded to the Sales Misconduct Disciplinary Oversight Committee, which makes final decisions on employee discipline. The committee reviewed the recommendation, concluded that Daniels helped a customer obtain a small business loan for personal purposes, and terminated his employment. The committee did not do its own research. Committee members never met Daniels, and there is no evidence that they were aware of his race, age, or disability status at the time he was terminated.

Because the treatment of other comparable employees outside the plaintiff's class(es) is an issue in employment cases, the Court also reviews the evidence presented regarding the treatment of several other employees accused of violating U.S. Bank policy. Mike Traversa, a white 34-year-old man with no known disabilities, was also employed as a Small Business Specialist. In September 2016, prior to the complaint about Daniels, Corso identified several loans that Traversa made to small businesses that were all for similar amounts, which indicated to her that Traversa was not tailoring the loans to the individual business's needs. Fioresi and Shepherd commenced an investigation, which revealed that Traversa had recommended small business loans for customers who used the loans for personal purposes. *See* D.E. 39, Defs.' Ex. 8 at USB000004 (Shepherd Dep. Ex. 101) (written report describing concern that "loan proceeds [were] being used for different purpose than disclosed in loan application process, and for purposes outside SBDLC Lending Policy."). They concluded that Traversa extended small business loans to customers for non-business

3

purposes and recommended his dismissal. Traversa's case was forwarded to the same committee, which adopted the recommendation of Fioresi and Shepherd and terminated Traversa's employment.

Daniels contends the treatment of several other U.S. Bank employees is also relevant. A fraud ring operating in the Chicagoland area in 2015 and early 2016 created false businesses and requested business loans.[1] Several U.S. Bank employees—white men under the age of 40 without any known disabilities—extended loans in reliance on the fraudulent applications. Daniels alleges the employees failed to conduct adequate due diligence into the fraudulent applications. Unlike Daniels or Traversa, U.S. Bank did not terminate any of these employees.

**Discussion**

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not warranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment in an employment discrimination case, the "sole question" is "whether a reasonable juror could conclude that [the plaintiff] could have

---

[1] Daniels attempts to dispute the existence of the fraud ring. *See* Pl.'s Resp. to Defs.' LR 56.1 Stmt. ¶ 45. But the only evidence he presents is deposition testimony of U.S. Bank employees who were unfamiliar with the ring—which is not evidence that no fraud ring existed. Daniels has not identified a genuinely disputed issue of fact through this evidence.

4

kept his job if he [was not a member of a protected class], and everything else had remained the same." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

The defendants have moved for summary judgment on all of Daniels' claims. The Court follows the parties' lead in considering the claims together, as the same facts underpin each. Daniels argues his claims under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This framework consists of three steps. The plaintiff first establishes a *prima facie* case that an adverse employment action was the result of discrimination based on a protected characteristic such as race. This requires the plaintiff to show that "(1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004). If the plaintiff meets these requirements, the employer "articulate[s] some legitimate, nondiscriminatory reason" for the adverse action. If the employer can do so, the plaintiff must present evidence that this reason is a mere pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802-04.

Daniels' *prima facie* case founders, perhaps among other places, on the requirement of evidence of differential treatment. He contends that other employees engaged in similar misconduct but were not terminated. "When a plaintiff claims to have been disciplined more harshly than other, similarly situated employees based on a prohibited reason, the plaintiff must demonstrate that the other employees 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Everroad v. Scott Truck*

*Systems, Inc.*, 604 F.3d 471, 479 (7th Cir. 2010) (quoting *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009)). Specifically, the plaintiff must show the other employees "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (quoting *Coleman v. Donahue*, 667 F.3d 835, 847 (7th Cir. 2012)) (internal punctuation omitted).

The defendants, pointing to their decision to terminate Traversa for a similar violation of U.S. Bank policy, contend that they treated similarly-situated employees alike. Daniels argues that the proper comparison is not to Traversa but rather to the employees who extended loans to individuals who were part of a fraud ring. These comparators were white males under 40 without any known disabilities. Daniels contends that they violated U.S. Bank policy by failing to conduct adequate due diligence that could have caught the fraud but that they were not terminated.

No reasonable jury could find that these employees were subject to the same standards as Daniels or that they were engaged in the same or similar conduct. *Skiba*, 884 F.3d at 723. First, no reasonable jury could find that the other employees' conduct was regulated by the same U.S. Bank policies as the conduct of Daniels at issue in this case. The two policies that the Bank cited when it terminated Daniels' employment were: "[t]he underwriting and approval of loans under this policy shall be for business purposes only" and "[c]redit requests for the purpose of debt consolidation may not be underwritten and approved per this policy." The Bank concluded that Daniels knowingly extended a loan in violation of these policies. Daniels has not presented any evidence

by which a reasonable jury could find that these policies—or, for that matter, similar policies—were implicated by the other employees' failure to conduct due diligence.

Second, no reasonable jury could find Daniels' conduct comparable to that of the other employees. U.S. Bank concluded that Daniels knowingly extended a business loan for a non-business purpose. By contrast, Daniels alleges that the other employees failed to conduct due diligence to prevent fraud. Among other distinctions, Daniels offers no evidence from which a reasonable inference could be drawn that they acted knowingly.

For these reasons, Daniels' evidence is insufficient to permit a reasonable factfinder to determine that U.S. Bank engaged in differential treatment of similarly-situated employees outside his protected class. He therefore fails to make out a *prima facie* case of discrimination.

Even if Daniels could establish a *prima facie* case, he has not offered evidence from which a reasonable factfinder could find U.S. Bank's proffered reason for his termination to be pretextual. For pretext, Daniels relies primarily on the same evidence just cited, but that evidence does not get him there for the reasons just discussed. Daniels also contends that the evidence shows the Bank knew that he did not actually violate its policy. It is difficult to see how that conclusion follows from the evidence he cites, specifically, an e-mail between two other U.S. Bank managers which states, in relevant part, "[t]he game plan was to use Jerome's loan to [pay off the home equity line of credit] and Kim would refi after into a lower rate, longer term loan." D.E. 46, Pl.'s Ex. 2 at USB0000524-25. This seems to support U.S. Bank's position, not refute it. No reasonable jury could infer from this evidence that the Bank knew that Daniels had not

violated policy. Nor is this evidence that would permit a reasonable inference that the Bank's stated reason was pretextual.

In sum, under the *McDonnell Douglas* standard, no reasonable jury could find in Daniels' favor.

The Seventh Circuit has made clear that *McDonnell Douglas* is not the only way to assess evidence of discrimination. A court should also determine whether all the evidence, taken together, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. *See David v. Bd. of Trs. of Comm. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (analyzing a plaintiff's claim separately under *McDonnell Douglas* and *Ortiz*).

In addition to the evidence discussed earlier, Daniels cites the deposition testimony of his immediate supervisor, Jim Kettleson. Kettleson's deposition describes the purportedly discriminatory intent of Fioresi, a U.S. Bank employee senior to both Kettleson and Daniels.

First, Daniels argues that Kettleson's deposition testimony shows that Fioresi had animus toward African-American employees that led him to scrutinize them more closely. But the cited evidence would not permit a reasonable jury to draw such an inference. Kettleson testified that Fioresi scrutinized the employees of Charter Bank, a bank that U.S. Bank acquired, more heavily than other employees. *Id.* at 155. Of these employees, at least two were African-American, and Kettleson claimed that Fioresi scrutinized them closely. *Id.* at 128-29, 218. But Kettleson's testimony does not draw a connection, aside from pure speculation, between these particular employees' race and

8

Fioresi's supposedly enhanced scrutiny of not just them but also other former Charter Bank employees. Indeed, Kettleson's testimony is likely inadmissible as speculative and/or lacking the requisite foundation.

Next, Daniels cites Kettleson's testimony that Fioresi once said "Oh, people have accused me of [discrimination] before. But I just do whatever I want." *Id.* at 86. *See also id.* at 222. The defendants contend that this is impermissible hearsay, but this statement is excepted from the rule against hearsay as a statement by a person who is an opposing party and an agent of the other opposing party. Fed. R. Evid. 801(d)(2)(A), (D). But the testimony would not permit a reasonable jury to conclude that Fioresi harbored discriminatory animus. When Fioresi's statement is placed into context, it is evident that he was not acknowledging that he *was* discriminatory, but that he was addressing how he faced *allegations* of discrimination:

> Q. And [Fioresi], out of the blue, said something about discrimination or what? How does that come –
>
> A. We were kind of talking about it as a management team.
>
> Q. About what?
>
> A. The retirement of Luke.
>
> Q. Oh, okay.
>
> A. And kind of, you know—because [Fioresi] was really concerned about, 'Hey, you know, I don't want to look like we're pushing anybody out the door,' you know, that kind of thing.

*Id.* at 88, 90. Kettleson's testimony reflects that Fioresi, while discussing his concern that a discussion could be perceived as discriminatory, he described how he responded to allegations of discrimination. *Id.* No reasonable jury could construe this testimony,

9

placed into context, as evidence that Fioresi harbored animus against employees based on any protected characteristic.

In sum, for the reasons discussed above, Daniels failed to present evidence sufficient to sustain his claims. Daniels cites evidence of other employees who were not terminated for their failure to employ due diligence while dealing with a fraud ring, but this evidence does not support an inference that he was treated differently because of a protected characteristic, as the other employees were not similarly situated to him. Likewise, Daniels' e-mail evidence indicated that U.S. Bank employees believed that he had extended a small business loan to pay off a residential loan—in other words, that he had violated a Bank policy—which does not support his position. Finally, Daniels' reliance on Kettleson's deposition testimony is misplaced, as no reasonable jury could rely upon that evidence to conclude Fioresi acted with discriminatory intent in recommending Daniels' termination. The evidence Daniels cites would not permit a reasonable jury to conclude that any of his protected characteristics caused his termination.

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [dkt. no. 37] and directs the Clerk to enter judgment in favor of defendants and against plaintiff.

                                                                           _____
                                                                             MATTHEW F. KENNELLY
                                                                            United States District Judge

Date: September 7, 2018